# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

TANIKO SMITH,

      Petitioner,

vs.

BRIAN E. WILLIAMS, et al.,

      Respondents.

Case No. 2:12-cv-00952-APG-VCF

**ORDER**

Before the court are the first amended petition for writ of habeas corpus (#35), respondents' motion to dismiss (#49), petitioner's opposition (#52), and respondents' reply (#53). The court finds that the petition is untimely, and the court grants the motion on that basis.

The court will give only the procedural history that is relevant to its ruling. The court already has given a more full procedural history of this case in an earlier order (#29), and petitioner has provided a procedural history in his first amended petition (#35). On March 28, 1997, petitioner was convicted in state district court of first-degree murder with the use of a deadly weapon, attempted murder with the use of a deadly weapon, two counts of robbery with the use of a deadly weapon, and attempted robbery with the use of a deadly weapon. Ex. 38 (#40). Petitioner appealed, and the Nevada Supreme Court dismissed the appeal on December 3, 1998. Ex. 44 (#41). On August 21, 2007, the state district court granted petitioner relief in his post-conviction habeas corpus petition, holding that the jury had not been instructed correctly on the theory of aiding and abetting for murder and attempted murder. Ex. 122 (#44). The state district court entered an amended judgment of conviction on the same date. Ex. 121 (#44). The state appealed. On January

1    20, 2009, the Nevada Supreme Court reversed and remanded, holding that the petition was untimely

2    under Nev. Rev. Stat. § 34.726(1).  Ex. 130, at 2-3 (#44).  The Nevada Supreme Court also held that

3    petitioner could not show prejudice to excuse the untimeliness of the petition because the jury

4    received the correct instruction.  Id. at 4 (#44).  The Nevada Supreme Court issued its remittitur on

5    May 12, 2009.  Ex. 134 (#44).  On March 14, 2012, almost three years later, the state district court

6    entered a second amended judgment of conviction that reinstated the convictions and sentences for

7    first-degree murder with the use of a deadly weapon and attempted murder with the use of a deadly

8    weapon.  Ex. 142 (#45).  Petitioner appealed, and the Nevada Supreme Court affirmed on May 15,

9    2013.  Ex. 150 (#46).

10        Ultimately, all of petitioner's post-conviction habeas corpus petitions filed in state court

11   have been untimely under Nev. Rev. Stat. § 34.726.

12        Respondents argue again that the court should re-evaluate its determination that this is not a

13   second or successive petition because of the entry of the second amended judgment of conviction.

14   Respondents do this to preserve the issue for further review, and the court will not address the

15   matter further.

16        Respondents next argue that the petition is untimely.

17        A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a
     person in custody pursuant to the judgment of a State court. The limitation period shall run
18   from the latest of—
     (A) the date on which the judgment became final by the conclusion of direct review or the
19   expiration of the time for seeking such review;
     (B) the date on which the impediment to filing an application created by State action in
20   violation of the Constitution or laws of the United States is removed, if the applicant was
     prevented from filing by such State action;
21   (C) the date on which the constitutional right asserted was initially recognized by the
     Supreme Court, if the right has been newly recognized by the Supreme Court and made
22   retroactively applicable to cases on collateral review; or
     (D) the date on which the factual predicate of the claim or claims presented could have been
23   discovered through the exercise of due diligence.

24   28 U.S.C. § 2244(d)(1).  If the judgment is appealed, then it becomes final when the Supreme Court

25   of the United States denies a petition for a writ of certiorari or when the time to petition for a writ of

26   certiorari expires.  Jimenez v. Quarterman, 555 U.S. 113, 119-20 (2009).  See also Sup. Ct. R.

27   13(1).  Any time spent pursuing a properly filed application for state post-conviction review or other

28   collateral review does not count toward this one-year limitation period.  28 U.S.C. § 2244(d)(2).

1  The period of limitation resumes when the post-conviction judgment becomes final upon issuance

2  of the remittitur.  Jefferson v. Budge, 419 F.3d 1013, 1015 n.2 (9th Cir. 2005).  An untimely state

3  post-conviction petition is not "properly filed" and does not toll the period of limitation.  Pace v.

4  DiGuglielmo, 544 U.S. 408, 417 (2005).  A prior federal habeas corpus petition does not toll the

5  period of limitation.  Duncan v. Walker, 533 U.S. 167, 181-82 (2001).

6          In this case, the entry of the second amended judgment of conviction had no effect upon the

7  timeliness of this action.  First, in Magwood v. Patterson, 561 U.S. 320 (2010), the Court held that a

8  habeas corpus petition raising new grounds after entry of an amended judgment of conviction was

9  not a second or successive petition within the meaning of 28 U.S.C. § 2244(b).  In Wentzell v.

10  Neven, 674 F.3d 1124 (9th Cir. 2012), the court of appeals extended Magwood to a question that

11  Magwood left open.  The court of appeals held that a habeas corpus petition that was filed after

12  entry of an amended judgment of conviction but which raised grounds regarding the unchanged part

13  of the judgment was not subject to the successive-petition bar of § 2244(b).  However, Magwood

14  made clear that its holding affected only the successive-petition bar of 28 U.S.C. § 2244(b) and not

15  any other procedural reason for dismissing a habeas corpus petition.  561 U.S. at 340.  Second, the

16  court of appeals addressed the question of amended judgments and the equivalent one-year period of

17  limitation on a motion attacking a federal-court sentence, now at 28 U.S.C. § 2255(f).  The court of

18  appeals held that in cases in which it "either partially or wholly reverse[s] a defendant's conviction

19  or sentence, or both, and expressly remand[s] to the district court . . . the judgment does not become

20  final, and the statute of limitations does not begin to run, until the district court has entered an

21  amended judgment and the time for appealing that judgment has passed."  United States v. Colvin,

22  204 F.3d 1221, 1225 (9th Cir. 2000).  This Court assumes that Colvin applies to a determination of

23  when a state judgment of conviction becomes final for the purposes of 28 U.S.C. § 2244(d)(1)(A).

24  The Nevada Supreme Court did not reverse petitioner's conviction or sentence, and it did not

25  remand for re-trial or re-sentencing.  The second amended judgment of conviction created no new

26  issues for petitioner to appeal, and it has no effect upon the one-year period of § 2244(d).

27          The current petition is untimely.  The Nevada Supreme Court affirmed the judgment of

28  conviction on December 3, 1998.  Ex. 44 (#41).  Petitioner's judgment of conviction became final

-3-

1    on March 3, 1999, when the time to petition the Supreme Court of the United States for a writ of

2    certiorari expired.  None of petitioner's earlier federal habeas corpus proceedings tolled the one-year

3    period under 28 U.S.C. § 2244(d)(2).  Walker, 533 U.S. at 181-82.  All of petitioner's state habeas

4    corpus proceedings were untimely, and they did not toll the one-year period under § 2244(d)(2).

5    Pace v. DiGuglielmo, 544 U.S. at 417.  The one-year period of § 2244(d)(1) expired at the end of

6    March 3, 2000, more than twelve years before petitioner commenced this action.

7           Actual innocence can excuse operation of the statute of limitations.  McQuiggin v. Perkins,

8    133 S. Ct. 1924, 1928 (2013).  Petitioner can present such a claim "if all the evidence, including

9    new evidence, makes it 'more likely than not that no reasonable juror would have found petitioner

10   guilty beyond a reasonable doubt.'"  Gandarela v. Johnson, 286 F.3d 1080, 1086 (9th Cir. 2002)

11   (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)).  Petitioner does not have any new evidence to

12   present in conjunction with the evidence presented at trial, but "[o]ne way a petitioner can

13   demonstrate actual innocence is to show in light of subsequent case law that he cannot, as a legal

14   matter, have committed the alleged crime."  Vosgien v. Persson, 742 F.3d 1131, 1134 (9th Cir.

15   2014) (citing Bousley v. United States, 523 U.S. 614 (1998)).

16          Petitioner argues that if the jury was instructed on aiding and abetting in accordance with

17   Sharma v. State, 56 P.3d 868 (Nev. 2002), then the jury could not have found him guilty of first-

18   degree murder with the use of a deadly weapon.  Prior to Sharma, the Nevada Supreme Court had

19   two lines of decisions regarding the proper instruction for aiding and abetting.  "In one line of cases,

20   for example, this court has required the State to show that the defendant knowingly and intentionally

21   aided another to commit the charged crime."  56 P.3d at 871.  The Nevada Supreme Court cited, as

22   an illustrative example, Tanksley v. State, 944 P.2d 240 (Nev. 1997), but this line of decisions went

23   back to at least 1979.  Sharma, 56 P.3d at 871 n.8.  In the other line, the Nevada Supreme Court

24   "adopted and approved the 'natural and probable consequences doctrine,' concluding that 'a

25   conviction for attempted murder will lie even if the defendant did not have the specific intent to kill

26   provided the attempted murder was the natural and probable consequence of the aider and abettor's

27   target crime.'"  56 P.3d at 871 (citing Mitchell v. State, 971 P.2d 813 (Nev. 1998) ("Mitchell I").

28   Sharma overruled the Mitchell I line, reaffirmed the Tanksley line, and held "that in order for a

1   person to be held accountable for the specific intent crime of another under an aiding or abetting

2   theory of principal liability, the aider or abettor must have knowingly aided the other person with

3   the intent that the other person commit the charged crime." 56 P.3d at 872. Subsequently, the

4   Nevada Supreme Court held that <u>Sharma</u> should be applied to cases that were final at the time of the

5   <u>Sharma</u> decision. <u>Mitchell v. State</u>, 149 P.3d 33, 37-38 (Nev. 2006) ("<u>Mitchell II</u>").

6        This is the instruction on aiding and abetting that the trial court gave to the jury in

7   petitioner's trial:

8        Where two or more persons are accused of committing a crime together, their guilt may be
         established without proof that each personally did every act constituting the offense charged.

9        All persons concerned in the commission of a crime who either directly and actively commit

10       the act constituting the offense or who knowingly and with criminal intent aid and abet in its
         commission or, whether present or not, who advise and encourage its commission, are

11       regarded by the law as principals in the crime thus committed and are equally guilty thereof.

12       <u>A person aids and abets the commission of a crime if he knowingly and with criminal intent</u>
         <u>aids, promotes, encourages or instigates by act or advice, or by act and advice, the</u>

13       <u>commission of such crime.</u>

14       The state is not required to prove precisely which defendant actually committed the crime
         and which defendant aided and abetted.

15

16   Ex. 30, at 55 (Instruction 44) (#40-2) (emphasis added). The Nevada Supreme Court has held that

17   the the underlined paragraph above satisfies <u>Sharma</u>. <u>Nelson v. State</u>, 170 P.3d 517, 526-28 (Nev.

18   2007). Instruction 44 tells the jury that they needed to find that petitioner had the intent for the

19   crime to be committed to find him liable as an aider and abetter. The only difference between this

20   instruction and the instruction that the Nevada Supreme Court recommended in <u>Sharma</u> is that the

21   instruction in <u>Sharma</u> mentioned the name of the crime. However, the jury is presumed to read all

22   the instructions, and another instruction informed the jury that aiding and abetting was one theory

23   for finding petitioner guilty of murder and attempted murder. Ex. 30, at 4-5 (Instruction 3) (#40).

24        Instruction 44 was not at all similar to the instruction approved in <u>Mitchell I</u> and later

25   disapproved in <u>Sharma</u>:

26       One who aids and abets [another] in the commission of a crime [or crimes] is not only guilty
         of [that crime] [those crimes], but is also guilty of any other crime committed by a principal

27       which is a natural and probable consequence of the crime[s] originally aided and abetted.

28

-5-

<blockquote>
In order to find the defendant guilty of the crime[s] of ____, [as charged in Count[s] ____,] you must be satisfied beyond a reasonable doubt that:

(1) The crime [or crimes] of ____ [was] [were] committed,

(2) The defendant aided and abetted such crime[s],

(3) A co-principal in such crime committed the crime[s] of ____, and

(4) The crime[s] of ____ was [were] a natural and probable consequence of the commission of the crime[s] of ____.
</blockquote>

<u>Mitchell I</u>, 971 P.2d at 820. The <u>Mitchell I</u> instruction, unlike Instruction 44 in petitioner's case, mentions nothing about intent.

The court is not persuaded by petitioner's argument for actual innocence. The evidence is no different than what was presented at trial, and the instruction actually given at trial satisfies the requirements of <u>Sharma</u>. Consequently, the court has confidence that the verdict would have been no different than what the jury actually gave at trial.

Petitioner also argues that he could not have been found guilty of murder under the alternative theory of felony murder.[1] Petitioner and three others robbed Christopher Brown and Mario Wesley in the parking lot of a restaurant. Brown grabbed his gun, shot at the robbers, in turn was shot through the legs, and fled. Wesley laid on the ground pleading for his life. Petitioner and the three others started walking away. One of the other robbers, Richard Gaston, turned around and shot Wesley. Petitioner stood by while this happened. Then all four together walked away from the restaurant. Ex. 24, at 58-59 (#39). Wesley later died. On direct appeal, petitioner presented a similar claim, that the evidence was insufficient to support the verdict under a felony-murder theory. The Nevada Supreme Court held:

<blockquote>
The felony murder rule operates to subject all participants in a crime to criminal liability for any murder committed during the chain of events that constitutes an enumerated crime. <u>Echavarria v. State</u>, 108 Nev. 734, 748, 839 P.2d 589, 599 (1992). For felony murder purposes, the crime of robbery is not complete until the perpetrator has escaped "with his ill-gotten gains." <u>Payne v. State</u>, 81 Nev. 503, 507, 406 P.2d 922, 925 (1965). Furthermore, the determination of when the chain of events constituting a crime is completed is a question for the jury. <u>Id.</u>
</blockquote>

---

[1] Willful, deliberate, and premeditated killing of Wesley by petitioner himself was a third theory of murder. Ex. 30, at 4 (Instruction 3) (#40). However, the prosecution did not argue this theory.

1
2
3

Upon a thorough review of the record, we conclude that sufficient evidence existed to support a conclusion that the robbery was still in progress when the victim was killed. Accordingly, we conclude that sufficient evidence was adduced at trial to support Smith's conviction for felony murder.

4  Ex. 44, at 3-4 (#41).  This court quotes the Nevada Supreme Court because robbery and the felony-

5  murder rule are matters of state law and the Nevada Supreme Court has summarized that law

6  accurately.  Petitioner argues that the robbery was completed because he was walking away from

7  Wesley when Gaston turned around and shot Wesley, but the crime of robbery is not completed

8  simply upon the declaration of the perpetrator.  The jury makes that decision.  Petitioner had not yet

9  escaped at the time of the shooting.  Petitioner still was present at the site of the robbery when

10  Gaston shot Wesley.  Petitioner's argument that he was not being pursued and that he was in no fear

11  of apprehension would have been put to the test and found wanting if he had stayed at the restaurant

12  much longer, because the police were on the way.  Petitioner argues that Gaston himself formed the

13  intent to kill and that the killing was not in furtherance of any crime or necessary for an escape, but

14  that argument is a non sequitur for the felony-murder rule.  The jury easily could determine from

15  that evidence that the robbery had not been completed when Gaston shot Wesley, thus making the

16  killing of Wesley first-degree murder, and then petitioner would be liable because he aided and

17  abetted the robbery.  Petitioner has presented no new evidence, and no change in the law, that would

18  disturb the jury's verdict.  The court is not persuaded by his argument for actual innocence under the

19  felony-murder rule.

20      Respondents also argue that all grounds are procedurally defaulted, that grounds 2 and 3 are

21  unexhausted, and that ground 1 does not present an issue of federal law.  The court will not address

22  these arguments because the court has determined that this action is untimely.

23      To appeal the denial of a petition for a writ of habeas corpus, Petitioner must obtain a

24  certificate of appealability, after making a "substantial showing of the denial of a constitutional

25  right."  28 U.S.C. §2253(c).

26
27
28

Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy §2253(c) is straightforward:  The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  The issue becomes somewhat more complicated where, as here, the district court dismisses the petition based on procedural grounds.  We hold as follows:

1     When the district court denies a habeas petition on procedural grounds without reaching the
       prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at
2      least, that jurists of reason would find it debatable whether the petition states a valid claim of
       the denial of a constitutional right and that jurists of reason would find it debatable whether
3      the district court was correct in its procedural ruling.

4  Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also James v. Giles, 221 F.3d 1074, 1077-79 (9th

5  Cir. 2000).

6          Ground 1 is a claim that the jury was not instructed properly on aiding and abetting in light

7  of Sharma.  As noted above, the Nevada Supreme Court has held that the language of Instruction 44

8  was in compliance with Sharma.  Nelson, 170 P.3d at 526-28.  The court concludes that petitioner

9  has not stated a valid claim of the denial of a constitutional right in ground 1.

10         Ground 2 is a claim that the jury instruction for willfulness, deliberation, and premeditation

11  allowed the jury to find petitioner guilty of first-degree murder without finding all of those elements.

12  The Nevada Supreme Court determined that that instruction blurred the elements together in Byford

13  v. State, 994 P.2d 700, 713-14 (Nev. 2000).  The Nevada Supreme Court has held that Byford was a

14  change in the law and was inapplicable to convictions that had become final at the time of the

15  Byford decision.  Nika v. State, 198 P.3d 839, 850 (Nev. 2008).  Petitioner's conviction became

16  final in 1999, before the Byford decision.  The instruction given to the jury was correct for its time.

17  Ground 2 does not present a valid claim of the denial of a constitutional right.

18         Ground 3 is a claim that appellate counsel provided ineffective assistance.  The verdict

19  forms did not specify the degree of murder, and the judge later polled the jury whether they intended

20  first-degree murder to be the verdict.  Each juror responded "yes."  Petitioner argues that appellate

21  counsel should have raised on direct appeal the issue that his conviction was invalid because the

22  verdict forms did not specify the degree of murder.  Jurists of reason would find it debatable, at

23  least, that this is a valid claim of the denial of a constitutional right.

24         The court also finds that jurists of reason would find debatable the court's conclusion that

25  this action is untimely and that petitioner had not shown actual innocence to excuse the time bar.

26  The court will issue a certificate of appealability.

27

28

1    IT IS THEREFORE ORDERED that respondents' motion to dismiss (#49) is **GRANTED** in

2  part.  This action is **DISMISSED** with prejudice as untimely.  The clerk of the court shall enter

3  judgment accordingly and close this action.

4    IT IS FURTHER ORDERED that a certificate of appealability is **GRANTED** for whether

5  this action was untimely and whether petitioner had shown actual innocence to excuse the time bar.

6  DATED:  *September 30, 2015.*

7

8

9                                                    ANDREW P. GORDON
                                                     United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28